UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SYLVESTER JOHNSON,

     Petitioner,

v.                                                    Case No.  8:19-cv-2297-CEH-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

### ORDER

Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). He subsequently filed a memorandum in support (Doc. 13). Respondent filed a response in opposition (Doc. 22) to which Petitioner replied (Doc. 29). Upon consideration, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner was convicted of first-degree murder (Doc. 23-1, Ex. 12) and sentenced to life in prison (*Id.*, Ex. 13). The conviction and sentence were affirmed on appeal (*Id.*, Ex. 18).

Petitioner filed a Motion for Post-Conviction Relief under Rule 3.850, Fla.R.Crim.P., which he amended several times (Doc. 23-2, Exs. 25, 29, 30, 32, 34,

1

35, 37, 38, 40). The motion was denied by the state postconviction court (Doc. 23-3, Ex. 43) and affirmed on appeal (Doc. 23-4, Ex. 54).

Petitioner filed his federal habeas petition (Doc. 1), which asserts four grounds for relief.

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

3

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case,

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. EXHAUSTION AND PROCEDURAL DEFAULT

The writ of habeas corpus cannot be granted unless the petitioner has exhausted all available state court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Lucas v. Sec'y, Fla. Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (citing 28 U.S.C. § 2254(b), (c)). Exhausting state remedies requires a petitioner to "fairly present" his claims in each appropriate state court "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *O'Sullivan*

5

*v. Boerckel*, 526 U.S. 838, 848 (1999) and *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)).

Under the procedural default doctrine, a claim raised in a federal habeas petition is barred from review if the claim was not raised in state court and "the court to which the petitioner would be required to present [the] claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1. To avoid a procedural default, a petitioner must show "either cause for and actual prejudice from the default or fundamental miscarriage of justice from applying the default." *Lucas*, 682 F.3d at 1353; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

## III. ANALYSIS

**Ground One:**      **TRIAL COURT DEPRIVED PETITIONER OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND A FULL AND FAIR CROSS-EXAMINATION OF STATE'S WITNESS BY DENYING PETITIONER OBJECTIONS TO IMPROPER**

## ADMISSION OF EVIDENCE OF ADVERSE WITNESS PRIOR CONVICTIONS.

Petitioner contends that his Sixth Amendment right to confront the witnesses against him was violated when the trial court precluded him from impeaching State witness Harry Hett with his prior felony convictions.[1] Petitioner alleges Hett testified incorrectly that he had four prior felony convictions and therefore defense counsel was entitled, under Section 90.610(1), Fla. Stat., to impeach Hett with his seven past felony convictions.[2] However, when defense counsel attempted to do so, the prosecutor objected, and the trial court sustained the objection because the defense had failed to disclose the information to the State during discovery. Petitioner therefore contends he was deprived a "full and fair" opportunity to challenge Hett's credibility.

This claim was raised in state court in Petitioner's direct appeal (Doc. 23-1, Ex. 16, docket pp. 138-45). The state appellate court per curiam affirmed the conviction and sentence without a written opinion (*Id.*, Ex. 18).

## A. No constitutional violation

---

1 The Court does not construe the claim as asserting ineffective assistance of trial counsel. And even if the claim was raised, Respondent correctly argues the claim is facially insufficient and procedurally barred from review (Doc. 22, pp. 24-27).

2 In Florida, "[i]f the witness denies ever having been convicted, or misstates the number of previous convictions, counsel may impeach the witness by producing a record of past convictions. Even if a witness denies a prior conviction, the specific offense is identified only incidentally when the record of the conviction is entered into evidence." *Fulton v. State*, 335 So. 2d 280, 284 (Fla. 1976).

Petitioner has shown no constitutional error by the state trial court when it sustained the State's objection to defense counsel impeaching Hett with three additional felony convictions. "The Sixth Amendment guarantees a criminal defendant the right to impeach adverse witnesses through cross-examination." *United States v. Barrington*, 648 F.3d 1178, 1187–88 (11th Cir. 2011) (citing *United States v. Arias–Izquierdo*, 449 F.3d 1168, 1178 (11th Cir.2006)). However, "[t]he right to cross-examine is not unlimited. . . .A defendant is not entitled to cross-examine 'in whatever way, and to whatever extent, the defense might wish. . . .'" *Id*. at 1188 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)(per curiam)). "The Sixth Amendment is satisfied so long as a defendant is permitted cross-examination which 'exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he properly can argue why the witness is less than reliable.'" *Id*. (quoting *United States v. Baptista–Rodriguez*, 17 F.3d 1354, 1371 (11th Cir.1994)). "'The test for the Confrontation Clause is whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination. . . .As long as sufficient information is elicited from the witness from which the jury can adequately assess possible motive or bias, the Sixth Amendment is satisfied.'" *Id*. (quoting *United States v. Orisnord*, 483 F.3d 1169, 1178 (11th Cir.2007)).

The jury heard evidence bearing on Hett's credibility. On both direct examination and cross-examination, Hett testified he had been convicted of a felony four times (Doc. 23-4, Ex. 59, docket pp. 436-37). He also testified that he was on probation at the time of trial and had ten years remaining (*Id.*, docket p. 447). And he testified he would borrow and drive the victim's truck despite having a suspended driver's license (*Id.*, docket p. 535). Defense counsel therefore elicited sufficient information from Hett to argue he was not a reliable witness (*see* Doc. 23-4, Ex. 65, docket pp. 1190-91) and enable the jury to assess his credibility. Cross-examination of Hett on three additional felonies would not have presented a significantly different impression of his credibility. Therefore, the trial court's decision to not allow defense counsel to cross-examine Hett with the additional felony convictions did not violate the Confrontation Clause.

## B. There was no prejudice

Even assuming a violation of the Confrontation Clause, Petitioner fails to demonstrate entitlement to relief. Any constitutional error by the trial court in excluding this evidence is subject to the harmless-error test set out in *Brecht v. Abrahamson*, 507 U.S. 619 (1993):

> In § 2254 proceedings, federal courts must evaluate constitutional errors under the harmless-error standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). As *Brecht* explained, "[federal] habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in

9

'actual prejudice.'" *Id*. at 637, 113 S.Ct. at 1722. To find "actual prejudice," a federal habeas court must conclude that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id*. (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1233–34 (11th Cir. 2014) (footnote omitted).

The jury knew Hett may not be a credible witness because he had committed four felonies, was serving probation at the time of trial, and was borrowing and driving the victim's truck with a suspended driver's license. Moreover, Hett's testimony was not significant in establishing Petitioner as the victim's killer. His testimony mainly provided: 1) that he discovered the victim dead in the victim's trailer; 2) that he called 911; and 3) some information about the victim and Petitioner (*Id*., docket pp. 491-543). Other overwhelming evidence, including DNA and fingerprint evidence, and Petitioner's confession to another prisoner, primarily convicted Petitioner (*See* Doc. 23-4, Ex. 63, docket pp. 931-32; 962-1031).

Considering the trial as a whole, Petitioner fails to show that the trial court's decision to not allow defense counsel to question Hett regarding his three additional felony convictions had a substantial and injurious effect or influence on the verdict so as to result in actual prejudice. Therefore, the state court's rejection of Petitioner's claim that his Confrontation Clause rights were violated was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Ground One warrants no relief.

**Ground Two:**      **PETITIONER WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DUE TO A FOURTH AMENDMENT VIOLATION, AS SUCH, THE TRIAL COURT ERRED IN SUMMARILY DENYING RELIEF WITHOUT AN EVIDENTIARY HEARING, WHEN COUNSEL FAILED TO EFFECTIVELY ARGUE  A FOURTH AMENDMENT VIOLATION AND FILE A MOTION TO SUPPRESS**

Petitioner contends trial counsel was ineffective in failing to move to suppress evidence obtained from Petitioner's bedroom, clothes, hair, fingernails, and saliva on the ground that Petitioner's consent to the searches was not voluntary. He argues his consent was involuntary because "law enforcement was so deceptive in forcing [him] to grant them consent, and so manipulative, that the consent was late consent, [and] did not validate the search. . . ." (Doc. 1, docket pp. 10-11). He appears to allege law enforcement coerced him into consenting to the searches by telling him it was "better" if he consented to the searches because they would get a warrant if he refused to consent (*Id.*, docket p. 10).

Respondent contends Petitioner's claim that he did not voluntarily consent to giving saliva, hair, and fingernail samples is procedurally barred from review because he never presented that claim to the state courts (Doc. 22, pp. 31-33). Respondent also contends Petitioner's claim that counsel was ineffective in failing to move to suppress because Petitioner did not voluntarily consent to a search of his bedroom or clothes is without merit (*Id.*, pp. 33-39).

11

**A. The claim that Petitioner did not voluntarily consent to giving saliva, hair, and fingernail samples is procedurally barred**

Petitioner arguably raised this portion of his ineffective assistance claim in his Rule 3.850 motion when he alleged counsel should have moved to suppress the "forensic samples" (Doc. 23-2, Ex. 40, docket p. 207). However, in Petitioner's Initial Brief on appeal from the denial, he solely argued that his clothes and evidence from his bedroom were taken without his consent  (Doc. 23-4, Ex. 53; docket pp. 59-62). Petitioner therefore failed to invoke one full round of the state's established appellate review process regarding his claim that the saliva, hair, and fingernail samples were taken without his voluntary consent. *See Boerckel*, 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. . . .").

Petitioner cannot return to the state courts to litigate this unexhausted claim because it would be procedurally barred under state procedural rules. *See, e.g.*, Fla.R.Crim.P. 3.850(h) (successive-petition bar), 3.850(b) (time-bar). Because Petitioner can no longer present the claim in the state courts, it is procedurally defaulted for purposes of federal habeas. *Coleman*, 501 U.S. at 735 n.1; *Henderson*, 353 F.3d at 891 (11th Cir. 2003). And Petitioner fails to allege let alone establish cause and prejudice or actual innocence to excuse the procedural default of this

ineffective assistance of counsel claim. Therefore, this part of Petitioner's ineffective assistance claim is procedurally barred from habeas review.

## B. Petitioner's claim fails on the merits

Petitioner's claim warrants no relief on the merits. To obtain relief, Petitioner must establish "(1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir.2006) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Petitioner cannot demonstrate a meritorious Fourth Amendment claim.

In *Treffinger v. United States*, 798 F. App'x 428 (11th Cir.), *cert. denied*, 141 S. Ct. 317 (2020), the Eleventh Circuit stated:

> With regard to a warrantless search conducted pursuant to a person's consent, the government bears the burden of proving that "the consent was … freely and voluntarily given." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id*. at 227. Some factors to be considered in the totality of the circumstances are whether the defendant was free to leave, the existence of coercive police procedures, the extent of the defendant's cooperation or awareness of a right to refuse consent, the ability of the defendant to refuse consent, the extent of the defendant's education and intelligence, and whether the defendant believed that no incriminating evidence would be found. *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002).

*Id*., 798 F. App'x at 433.

13

In denying the claim, the state postconviction court found Petitioner's consent was voluntary and not coerced (Doc. 23-3, Ex. 43, docket pp. 15-17). Specifically, the court found the record refuted Petitioner's allegation he was threatened that he would be arrested if he did not consent to a search, Petitioner signed a consent to search form "freely and voluntarily, without any threats or promises of any kind[,]" and law enforcement's statement to Petitioner they would call to get a search warrant did not amount to coercion sufficient to undermine Petitioner's written consent (*Id.*). Under the AEDPA, this Court must give deference to the state court's fact finding. Thus, despite Petitioner's contention that his consent was coerced, the state court found otherwise, and Petitioner has not rebutted that by clear and convincing evidence, as required by the AEDPA.

The factual findings are supported by the record. Petitioner concedes he gave consent for the searches. Although there was no evidence concerning his education or intelligence or whether he believed that no incriminating evidence would be found, he signed a Consent to Search Form in which he was informed that he had the right to refuse to consent to the search, and he authorized "a complete search of the premises" and affirmed his consent was made "freely and voluntarily, and without any threats or promises of any kind." (Doc. 23-3, Ex. 43, docket pp. 150-52). Therefore, he was aware he had the right to refuse to consent to the searches, elected to consent, and affirmed his consent was voluntary and not coerced.

14

And there is no clear and convincing evidence that the officers coerced Petitioner into signing the Consent to Search Form.  Petitioner lived next door to where the victim was found dead, and the officers saw what appeared to be blood on the doorknob inside Petitioner's trailer, Petitioner's pants, and Petitioner's bedsheet. Because this provided a basis for the officers to obtain a search warrant, the officers' statements that they would obtain a search warrant did not preclude a finding that Petitioner's consent was voluntary. *See, e.g.*, *United States v. Racca*, 255 Fed. Appx. 367, 369 (11th Cir. Oct. 18, 2007) ("Even if the officers had stated that they would get a warrant if he did not consent, this would not render his consent involuntary; that the police inform a party that they will obtain a warrant if the party does not consent to a search does not amount to coercion.") (citing *United States v. Garcia*, 890 F.2d 355, 361 (11th Cir.1989)); *United States v. Creech*, 221 F.3d 1353, 2000 WL 1014868, at *2 (10th Cir.2000) (unpublished opinion) ("where some basis exists to support an application for a search warrant, an officer's expressed intention to seek a search warrant in the absence of consent does not render a consent involuntary."); *United States v. White*, 979 F.2d 539, 542 (7th Cir.1992) (where officer's expressed intention to obtain a search warrant was genuine and not merely a pretext to induce submission, such intention did not vitiate consent.).

Under the totality of the circumstances, Petitioner's consent was voluntarily given. The searches therefore did not violate the Fourth Amendment. And even if

15

Petitioner's consent was not voluntary, the evidence obtained during the searches would have been admissible under the inevitable discovery doctrine, since the officers were actively pursuing a search warrant before Petitioner gave consent to the searches. *See United States v. Delva*, 922 F.3d 1228, 1245 (11th Cir. 2019) ("Under the exception for 'inevitable discovery,' the government may introduce evidence that was obtained by an illegal search if the government can establish a reasonable probability that the evidence in question would have been discovered by lawful means. . . .The government must show that the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct.") (citation and internal quotations omitted); *Rodriguez v. State*, 187 So. 3d 841, 845 (Fla. 2015) ("The inevitable discovery doctrine was first adopted by the United States Supreme Court in *Nix* [*v. Williams*, 467 U.S. 431 (1984)] and has long been recognized by this Court."). Accordingly, Petitioner's counsel was not deficient in failing to move to suppress the evidence discovered during the searches.

Petitioner has failed to demonstrate that the state postconviction court's resolution of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Two warrants no federal habeas relief.

**Ground Three:     PETITIONER WAS DEPRIVED OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN TRIAL COUNSEL FAILED TO PRESERVE ISSUE FOR REVIEW DUE TO FUNDAMENTAL ERROR, IN THAT TRIAL**

16

**COURT SUBSTITUTE AND ADDED AN ALTERNATIVE FELONY ELEMENT INSTRUCTIONS TO JURY. THE ASSISTANT STATE ATTORNEY "BOLAN", STATED THAT THESE ARE THE SAME INSTRUCTIONS HE PRINTED OUT THE LAST TRIAL, WHICH WAS MIS-TRIED, AN ELEMENT NOT ALLEGED IN PETITIONER'S INDICTMENT AND VERDICT FORM**

Petitioner contends trial counsel was ineffective in failing to object to the felony murder jury instruction. He argues giving the instruction was error because felony murder was not charged in the Indictment, and the error was not preserved for appeal because trial counsel failed to object to the instruction. Finally, Petitioner contends the trial court committed fundamental error when it gave the instruction.

Respondent argues that to the extent Petitioner alleges ineffective assistance, the claim is procedurally barred from review because it was never raised in Petitioner's state postconviction motion or on appeal from the denial of the motion (Doc. 22, pp. 39-40). The Court agrees. A review of the record reveals Petitioner failed to raise this ineffective assistance of counsel claim in either his Rule 3.850 motion or his Initial Brief on appeal from the denial of the motion (Doc. 23-2, Ex. 40; Doc. 23-4, Ex. 53). He cannot return to the state courts to litigate this unexhausted claim because it would be procedurally barred under state procedural rules. *See, e.g.*, Fla.R.Crim.P. 3.850(h) (successive-petition bar), 3.850(b) (time-bar). Because Petitioner can no longer present the claim in the state courts, it is procedurally defaulted for purposes of federal habeas. *Coleman*, 501 U.S. at 735 n.1; *Henderson*, 353 F.3d at 891. And Petitioner fails to allege let alone establish cause and

17

prejudice or actual innocence to excuse the procedural default of this ineffective assistance of counsel claim. Therefore, the ineffective assistance claim is procedurally barred from habeas review.

Even if the claim were not procedurally barred, it would fail on the merits. In Florida, first-degree murder can be proven either through premeditation or felony murder. *See Pearce v. State*, 880 So. 2d 561, 573 (Fla. 2004) ("[T]here are two ways in which first-degree murder can be proven under Florida law: through a premeditated design to kill or when the killing occurs during the course of an enumerated felony. . . .") (citing § 782.04(1), Fla. Stat. (1999)). And "if an indictment charges premeditated murder, the State need not charge felony murder or the particular underlying felony to receive a felony murder instruction." *Crain v. State*, 894 So. 2d 59, 69 (Fla.2004) (citations omitted). "[I]n felony murder situations the notice required by due process of law and supplied by the charging document as to other offenses is provided instead by [Florida's] reciprocal discovery rules and by the enumeration in section 782.04(1)(a)(2), Florida Statutes (2003), of the felonies on which the State may rely to establish first-degree felony murder." *Id*. Thus, because Petitioner was charged with premeditated first-degree murder, under Florida law the trial court could instruct the jury on felony murder, notwithstanding that felony murder was not charged in the Indictment.

*Schad v. Arizona*, 501 U.S. 624, 636–37 (1991) (plurality), instructs that a federal court is bound by the state supreme court's interpretation of state law.

18

If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law. *See Mullaney v. Wilbur*, 421 U.S. 684, 690–691, 95 S.Ct. 1881, 1885–1886, 44 L.Ed.2d 508 (1975) (declining to reexamine the Maine Supreme Judicial Court's decision that, under Maine law, all intentional or criminally reckless killings are aspects of the single crime of felonious homicide); *Murdock v. City of Memphis*, 20 Wall. 590, 22 L.Ed. 429 (1875). In the present case, for example, by determining that a general verdict as to first-degree murder is permissible under Arizona law, the Arizona Supreme Court has effectively decided that, under state law, premeditation and the commission of a felony are not independent elements of the crime, but rather are mere means of satisfying a single mens rea element. The issue in this case therefore is not whether "the State must be held to its choice," post, at 2510–2511, for the Arizona Supreme Court has authoritatively determined that the State has chosen not to treat premeditation and the commission of a felony as independent elements of the crime, but rather whether Arizona's choice is unconstitutional.

Because giving the felony murder instruction was appropriate, counsel was not ineffective in failing to object to the instruction.

Finally, to the extent Petitioner contends the jury instruction constituted fundamental error, "the fundamental error question is an issue of state law, and state law is what the state courts say it is." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017). "[I]t is not a federal court's role to examine the propriety of a state court's determination of state law." *Id.*; *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Therefore, Petitioner's contention that giving the felony murder jury instruction constituted fundamental error is an issue of

state law that provides no basis for federal habeas relief. Accordingly, Ground Three

warrants no relief.

**Ground Four:**    **PETITIONER WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL AFFIRMATIVELY MISADVISED HIM NOT TO TESTIFY[,] EFFECTIVELY PREVENTING THE JURY FROM HEARING TESTIMONY WHICH WOULD HAVE CAST DOUBT ON HIS CULPABILITY AND WEAKEN THE STATE'S CASE AGAINST HIM, AS SUCH THE TRIAL COURT ERRED IN SUMMARILY DENYING RELIEF WITHOUT AN EVIDENTIARY HEARING.**

Petitioner contends trial counsel was ineffective in advising him to not testify.

He asserts that had he testified, "his testimony would have been favorable to the

defense at trial, and a [sic] acquittal would have followed." (Doc. 1, p. 16).

This claim was raised in state court in Petitioner's Rule 3.850 motion (Doc.

23-2, Ex. 40, p. 218). In denying the claim, the state postconviction court stated:

> The Defendant alleges that counsel was ineffective for coercing and advising the Defendant not to testify when the Defendant did indeed wish to testify. He alleges that his counsel threatened to withdraw from the case if the Defendant testified because it would be "impossible for them to raise the issues and concerns that interest without him testifying." The Defendant alleges that his counsel advised him that it would be a terrible idea to testify and that the State would "chew him up." The Defendant attaches a letter to his motion in which his counsel indicates that the only way to present most of the information the Defendant wanted to present to a jury would be for the Defendant to testify but that counsel believed that was a terrible idea. The Defendant alleges that absent counsel's deficient performance, there is a reasonable probability that the outcome of the trial would be different.

The Court previously found this ground to be vague and conclusory. The Defendant failed to allege what he would have testified to in order for this Court to determine whether or not counsel's advice was deficient or whether or not the absence of his testimony effected the outcome of the case. See Hayes v. State, 79 So. 3d 230, 231 (Fla. 2d DCA 2012) (stating that a claim for ineffective assistance of counsel for misadvising a defendant not to testify is facially insufficient where the defendant fails to allege the substance of his proposed testimony). Accordingly, this claim was stricken and the Defendant was given leave to amend, and warned that failure to amend would result in the ground being denied with prejudice. See R. 3.850(f)(2),(3).

The Defendant makes no amendments to this claim. As the Defendant has failed to amend this claim in order to make it facially sufficient by alleging the substance of his proposed testimony, the claim should be denied. See R. 3.850(f)(2),(3). Nonetheless, the letter attached to the Defendant's motion in which counsel advises the Defendant that it would be a terrible idea for the Defendant to testify does not demonstrate coercion. Additionally, the record reflects the Defendant's decision not to testify was freely and voluntarily made. (See Exhibit B, at pp. 1058-59). Specifically, the Court asked the Defendant if anyone had forced him or coerced him into not testifying and the Defendant responded in the negative. The Defendant indicated that it was his choice not to testify and that his choice was made freely and voluntarily. Ground Fifteen was not properly amended; it is refuted by the record nonetheless; and it is therefore denied.

(Doc. 23-3, Ex. 43, docket pp. 22-23). Petitioner raised the claim on appeal from the

denial of the Rule 3.850 motion (Doc. 23-4, Ex. 53, docket pp. 63-67). The appellate

court affirmed without a written opinion (Id., Ex. 54).

The state courts' rejection of the claim was not objectively unreasonable

because Petitioner failed to establish prejudice. To obtain relief under his claim that

counsel was ineffective in advising him to not testify, Petitioner had to show both

deficient performance and "that there was a reasonable probability that his testimony

would have led to a different outcome in the case." *Topete v. United States*, 628 F. App'x 1028, 1029–30 (11th Cir. 2015) (citing *Strickland*, 466 U.S. at 697). *See also Lambrix v. Singletary*, 72 F.3d 1500, 1508 (11th Cir.1996) ("a defense attorney renders ineffective assistance if he fails to adequately inform his client of the right to testify, *and that failure prejudices the defense* ") (emphasis added); *United States v. Harris*, 613 F. Supp. 2d 1290, 1309 (S.D. Ala. 2009) (defendant's statement "that he would have testified had he known the decision was his is not enough to establish prejudice.").

Petitioner failed to show a reasonable probability that his testimony would have changed the outcome because he never alleged what his testimony would have been. At best, he alleged that had he testified, "the outcome would or could have been different." (Doc. 23-2, Ex. 40, docket p. 218). Petitioner's vague and conclusory allegation of prejudice was insufficient to warrant relief. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("'Conclusory allegations of ineffective assistance are insufficient.'") (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir.1991)); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that conclusory statements, unsupported by specific facts or the record, are insufficient to state a claim for ineffective assistance of counsel).

Petitioner fails to meet his burden of proving that the state courts unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim. Ground Four is therefore denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The **Clerk of the Court** is directed to enter judgment against Petitioner and close this case.

3. Petitioner is not entitled to a certificate of appealability (COA). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, a petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is entitled to neither a COA nor leave to appeal *in forma pauperis*. A COA is therefore **DENIED**. Leave to appeal *in forma pauperis* is likewise **DENIED**. Petitioner must obtain permission from the circuit court to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida on July 26, 2022.

23

Charlene Edwards Honeywell
United States District Judge

Copies to:
Petitioner, *pro se*
Counsel of Record